Next case is 20-3029, United States v. Wasson. Counsel, please prepare to argue. Good morning, counsel. And as Judge Connor, our country judge in the Valley, when I used to practice down there, used to say, Ms. Nichols, you remain under oath. I appreciate that. If I may have just a moment here to get some things moved around, there we go, so that I am looking at the right case in front of me here. All right. OK, is the court ready for me to proceed? I think we're ready to hear you. All right. Good morning. My name is Paige Nichols, and I represent the appellant Mr. Wasson in this case. Here we have just really one question. Maybe it breaks down into two questions, and that is, how little can the government do and still prove the transport element in a 2252A case beyond a reasonable doubt? So I say this breaks down into two questions, and I think those questions are, what? I suppose the government's going to answer, not very much. They certainly answered that in this trial. That's the way they answered it in this trial, right? But I think first we need to figure out what does a transport mean? Because I am not sure what the government's position is on that, so. That's not an open question. There's plenty of authority on that already, isn't there, across the country? What transport means in a computer sense of the word? So I don't have any disagreement with the commerce piece of it. The part that we're focused on is the movement part of transport. What does that mean? What did they have to do to show a movement? Because transport has to be different from pure access through a computer to pornography. That's a different subsection. But transport has to mean taking something from point A to point B. Otherwise, what is the act that differentiates that crime from the other crimes in the statute that carry a lower sentence? So what do you think point A to point B would be satisfied by? In other words, if the testimony, if someone from Yahoo or Google came in and said, this landed on our server, are you good? Is that the missing piece for you? So that's half of it. So they would need to also tell me that it didn't start out on their server. That, for instance, in the instant messages that had images attached, we don't have the instant messages. We don't know where they started out. Were they drafts that started out on the Yahoo server? And so, yes, I do think that probably at putting the testimony about where digital evidence ends up on a server, and usually, oftentimes, you'll even have some kind of web address with some string of numbers and figures on them. We just don't have any of that here. The images landed somewhere, though, because they ended up in Quark. Right. Why is that not enough by itself? So the images physically exist somewhere. And for instance, just going back to the Yahoo instant messages, so that's counts 1 and 4. And those are the counts where all we have is the tip line report and the Yahoo representative who says, I don't know how we determine whether something has been uploaded, and I can't tell you anything about this. But yeah, that report says what it says. But they don't have the messages. So the images exist, so they've been transferred from somewhere. So this is where I don't know, because as I said before, a lot of times, I think, when we are composing messages for an email or an instant message, I don't know where we're composing them, because there's no evidence about that in this case. But it seems like some of these things get composed inside. Once you're in cyberspace, you may be composing something in cyberspace. So let's say, for instance, if an image is received in an instant message, and you are already on the Yahoo server looking at your instant message, and you take that image and you start to forward it, you put it in another instant message in order to forward it, I don't know whether that message has been moved, transported, or not. We don't even know if these instant messages were sent. We didn't have that evidence. Wasn't the client interviewed after they executed a search warrant, in this case, or around that time? Yes. And didn't he say that he got his child pornography by uploading it and through Skype communications? So he, right. He made a number of statements about, I'm not so sure about the uploading part, definitely the downloading. He definitely confessed to downloading from those chats. Let's go with the downloading. He downloads from what? Was it Dropbox and Skype? Something like that. OK, let's just go with that. He downloads it from the internet. Why isn't that transportation? He got a server, and he downloads it. And you're not arguing about commerce, and we don't have to be concerned about whether it was transported in Interstate Commerce when that transport took place, but it was transported from one location to another. What's the problem with that? So I think that what Your Honor has just described might mean that there was at least much closer sufficient evidence on the possession after a previous transport count. That's the last count. Excuse me, I think it's count five. But the government charged very specific images on the other counts. Let's pause one second. Let's go with count five. Count five below, you challenge the Interstate Commerce element of count five. You did not make the same transport argument that you made relative to counts one through four. And you have not argued plain error on appeal. So it's not clear to me why that isn't waived at all. And I'll pull it up if you need me to pull it up. But the language is clear that you had an interaction. There was a colloquy with the court, and the Interstate Commerce element related to count five. Is that not your understanding of the record? I think Your Honor may well be right. But I want to point out, the government did not argue that we waived for lack of arguing plain error. So if this is a plain error problem, then the government has waived it. Well, yes, but it's still in our discretion whether we accept that waiver or not. But I get it. Go ahead. Yes, I understand. And I mean, beyond that, I agree that the sufficiency argument is less strong on the possession count. But I wanted to emphasize the point, though, that on the transport counts, the charges transported these particular images. And just in the same way that if the government says you possess this particular gun, the evidence better show that you possess that particular gun, not some other gun. Yes, and let's talk about one through four then. What was the theory of transport? Was it not uploading? It was uploading, yes. OK, and uploading to the Yahoo? And was it just Yahoo? I thought it was Google too, the Google search? Right, so there's two accounts. One and four are uploads to Yahoo Instant in the messaging environment, whatever that means. And then one was uploading to a Google photo album. We don't know where that album was. We don't know uploaded from where to where. But there were copies of images in there. So maybe they were uploaded from one subfolder to another. Is that a transport? I don't know. Nobody testified that it was. And then the last one was attachments to a Yahoo email, which again, we don't know whether they were sent. In fact, the agent said sent and then kind of backed off his testimony on that. But after trial, there was some discussion from the government about maybe they weren't even sent. They were grabbed up by Yahoo before they were sent. But again, we just don't know where those things were drafted and where one thing was moved from one place to another. Well, if they were moved from one folder to another, if in light of your argument, at least as I understood, your position that transports one location to another, why isn't that sufficient? It's not sufficient because it's not moving. If you're not arguing interstate commerce and you're saying one location to another, if I move it from one folder to another, I've moved it from one location to another. It looks like that, I think, if you look at the exhibit because you have folders and subfolders. I don't know. I can't stand here and tell you that I understand how this business works digitally. And this is the problem that I think it probably didn't take much, but an expert to explain that when you have, if you have a copy of something here and you have a copy of something over here, that this is in fact, these are two separate places and that it is a movement to make a copy here and put it here. Let me ask you this, was the inference for downloading, well, no, uploading as it relates to counts one through four was the inference in part based upon the fact that the same images existed on his computer? So on counts one and four, which are the Yahoo instant messages, they don't, I don't, there's no testimony that those images were found on his computer. The ones in the, attached to the email, the Yahoo email, that's, hang on, I'll tell you which count that is. That's count three. They did put on evidence that they found those videos on his computer, but I don't know where the emails were. If they were on his computer and attached and Yahoo can, you know, reach into your computer and pluck something, I don't know, because there was no expert to testify about it. And I think Judge Malgren really makes the point when he says, I'm operating at the outer limits of my understanding here. You know, I try to send things and the gremlins get it. I don't know what's going on out there in cyberspace. So I recognize this is, you know, we're talking about a very close issue here, but again, it just comes down to just how little can the government do to support this element. And I'll go next. Let me ask you this though. What significance should we attach in your argument to the fact that, at least as I understand it, there was no effort to get any sort of definition of upload, download, or transport for purposes of the jury instructions. I mean, if you thought below that it was necessary that there be definitions of these things for a reasonable jury to understand the case, why wasn't it incumbent upon somebody to ask for those definitions? Because I don't think those are legal. I mean, I think those are like questions of cyber technology that an expert- Well, no, I mean, there's a lot made out of the fact what does upload mean? What's download mean? Well, somebody could have defined those things, right? That's right, but I think that the defense here was more about what the government failed to do, and I don't- I'm sure it is, but I mean, but the point is, if their argument is that, look, we had somebody say this was downloaded, we have somebody say this was uploaded, and we're saying a reasonable jury would understand upload means that it moved from one place to another. Reasonable jury would understand download means it moved from one place to another, and there's no definition of transport, right, apart from the interstate commerce, and there's a line where the counsel, this counsel, counsel below said, well, they're inextricably intertwined, Your Honor, transport and interstate commerce, which obviously on appeal is not your position. And so if there's an ambiguity here, and a reasonable jury could say, well, there was testimony that it was uploaded, there's testimony that it was downloaded, and it wasn't downloaded in his house. In other words, nobody testified that they moved, well, I don't know what location means, but nobody testified that those images that were on the Yahoo server or the Google server, that he had those servers in his house. And so a reasonable jury could say, well, you know, there was testimony about it, so why wasn't that testimony for movement? I mean, in other words, if there is any framing or lack of clarity on these terms that are very commonplace now, I'm trying to understand why it wasn't incumbent upon you or counsel below to ask for instructions on those things. That may have been a good idea, but I don't think that instructional requests change the government's burden to establish an element beyond a reasonable doubt. And they just didn't quite get there here. And if I could reserve my time, I'd appreciate that. I'm fine. May I please the court? Is the court ready for me? Yes, I'm sorry, I realized that I was muted there. I apologize. No problem, Your Honor. Good morning. My name is Jason Hart. I'm an assistant United States attorney for the District of Kansas, appearing on behalf of the government in the Lawson matter. I think, listening to the court's questions, I think as counsel for the defendant advised, this sort of breaks into two places. And I think it's most useful for the court to start with defining the law and then applying the facts to the law. And the government contends that the law is plain in this case. And the 10th Circuit, y'all have even recognized the change that occurred in the amendment to the statute back in 2008. That was recognized in 2009 in the United States v. Swenson case when then Judge Gorsuch, now Justice Gorsuch, observed, quote, other circuits sanctioned the assumption Schaeffer rejected, and Congress responded to Schaeffer by amending section 2252, big A, to make clear that such an assumption will be tenable in future cases. And the assumption was, is that the transmission. Aren't counts one through four, the counts that relate to, it was transported through use of a instrumentality of interstate commerce? Correct. And actually the jury instruction was very clear on this. It incorporated either using a means or facility of interstate commerce or affecting interstate or foreign commerce, including by computer. I think one of the things the court keyed in on is the defendant's argument has shifted as we have progressed. Initially, they made an oral motion for judgment of acquittal, arguing that we didn't show in interstate commerce, which actually didn't appear, that hearkened back to the original 2252 statute. Once that got resolved and they were shown, oh, that's not gonna be an availing argument, the argument then shifted and it's then sort of shifted again as we've gone forward. That's why I'm not clear why you're talking about Schaefer now. I mean, what difference does any of that make? I mean, that relates to an issue that they've taken off the table. They're not talking about interstate commerce. They're talking about transport, one location to another. Well, it's the definition of the word transport that defense counsel has argued about. And when you talk about fundamental canons of statutory construction, one of the things this court talks about is that it's interpreted as taking the ordinary contemporary common meeting at the time Congress enacted the statute. So when Congress enacts this statute, it's in response to Schaefer. But Schaefer was a commerce issue. They're not arguing about, no, Schaefer, I was intimately aware of Schaefer and Schaefer, we were talking about interstate commerce. We weren't talking about what we're talking about now, which is the question of one location to another transport. Right. The reason why I bring that up is because what Congress does in its findings in making the statute is make clear, I'm gonna quote from the public law on this, the transmission of child pornography using the internet constitutes transportation and interstate commerce. That should basically put a bullet in all of the defendant's arguments because Congress has been clear, if you're using the internet to transmit child pornography, that constitutes transportation and interstate commerce. What is your definition of transport? I know what the defendants is, but I never did see that in your brief. Well, I agree with what Congress stated, as I just read, is that- What is a transport and what's not a transport? I think transmission using the internet is transport. As Congress has defined it. If it goes into the ether, as Judge Melgren said, that's a transport. I suppose, yes, so long as the internet is the ether that we're talking about. I think what the court's question kind of gets to is how do you distinguish distribute versus transportation or receipt versus transportation? Or how this transmission is different than simple possession? And I would say- I'm still waiting to hear what- I'll be off video for a second here. Go ahead. What do you mean by transport? And then the word upload is substituted for transport, right? And maybe everybody doesn't know what upload means. Well, Your Honor, I think we generally, as a society, we actually do understand what upload means and we understand what transmission over the internet means. And those terms are what the meaning- what I would ascribe to the meaning of transport in the context of this statute is that we're talking about transmitting something via the internet. Well, transmitting via the internet begs the question, what is transmitting mean? I mean, I'm still waiting for you to respond to Judge Phillips' question. I mean, what- I mean, that language that you quoted is directly responsive to Schaefer in the sense that it's saying, if you get on the internet, you are transmitting interstate commerce. Schaefer dealt with an interstate commerce problem. Congress fixed that problem. That begs the question, what does transmit mean? Schaefer tells you what moving in interstate commerce means, but so what are you saying transmit means? The part before interstate commerce. If I'm using Cox Communications to send something or to upload something or to transmit something, I am doing the transmission. I'm transporting it through Cox Communication to wherever it is I'm intending it to go, which we actually showed in this case that the IP addresses from the defendant's house went through Cox Communications and were captured by Google and Yahoo. And thus, we actually presented evidence that there's transmission through Cox Communication of these images through the internet from the defendant's residence to Yahoo and Google respectively. We also showed, and I think as the court candidate, is the defendant acknowledged much of his activity and described how it was he was doing stuff, including using Dropbox, ChatStep, and Skype. Skype became important as to count three because what we showed is we could show that he actually received images through Skype in September of 2017, and then actually puts those in an email on December 29th, 2017, and sends them to another user on Yahoo. Would the just putting in an email, would that have been a transmission itself? The way Yahoo operates, putting them in the email because it's a web-based email, yeah, you're having to move it to Yahoo. So yes, it would be. That might be different than say you're sitting at your computer at your desk and you have Outlook and your computer right there, you're not using a web-based interface to access your email. Once you press send, yes, it would. Are you accepting their argument then that it's location to location? Is that what transport means? No, and I think what Congress did in making the amendment was to get rid of this location to location argument. And the reason why that's important, I think we outlined the sort of result that would occur if we required location to location is actually highlighted by count three. If you have a Yahoo user send an email to another Yahoo user, where does that location exist? It's all on Yahoo's server, so if I were to show that this email is supposed to move from some place point A to point B, but it's all on Yahoo's server, I can't very well show that. Well, it depends on what location means. I mean, if location means a different virtual address then, I mean, it depends on what location means. It could mean a physical address or it could mean a different place on the server, right? But I think what Congress meant to get away from is the location idea and more specifically to focus on the use of a facility of interstate commerce, that being the internet. So if you're using the internet to conduct this transmission, that is sufficient. And then just- So the minute you hit send, that's it? In the context of a web-based email, it probably occurs before you press send. The difference being is- Well, it occurs when you post it. I'm sorry? The word is post, correct? Depending on the interface. That would be Facebook. And in some messenger interfaces, it'll just be the little arrow that says send, but you may actually have a plus sign that's indicating you're uploading something. So we may use post, we may use send, we may use submit, but all of these things in the web-based context, we understand commonly that to get stuff out there, we are having to upload it. We're transmitting- We're having a long conversation about what you're saying we commonly understand. And if this is a sufficiency of the evidence argument, this is an argument about what the jury would have had before it in order to make its determination. And if you had no testimony about uploading, you had no testimony about downloading, as I recall, what it means, then it seems to me the posture we're in is why would a reasonable jury have known that what went on here was in fact a transmission? And again, going back to Schaefer, Schaefer dealt with one problem, interstate commerce. So it said, if you put something on the internet, you're transmitting in the interstate commerce. Is that to say that the first part of that, transmit, what is that? They're telling you that if you put it on the internet, you use the internet, you're transmitting in interstate commerce. Are you saying that means if you put it on the internet, you're transmitting it by definition, right? Yes. Okay, and so when Google and Yahoo had his IP addresses, that meant at some point or another, those IP addresses and the content associated with them had to have hit Google and Yahoo servers. Correct, Google would not have had, the fact that there's an IP address necessarily means that the internet is being used. It's an internet protocol address. So by virtue of Google having captured an internet protocol address, the only way that Google is able to do that is because the internet is used. And they use them in connection with the images that are subject of the charges? Correct, because that was what Google and Yahoo both reported. When they send the images, they also send, we also captured this IP address at the time. All of that information is what led to identifying the defendant at his residence in Great Bend, Kansas. And I don't think it's unreasonable for a jury to infer that neither Google nor Yahoo operates their servers out of the defendant's residence in Great Bend, Kansas. I think when we talk about what the jury commonly sort of understands, in a different context, namely supervised release, this court has recognized that we live in a digital age such that blanket prohibitions on accessing the internet are inappropriate. As this court and specifically Judge Lucero noted in United States v. Ullman, in the decade since we decided Walzer and White number one, the internet has become more crucial to participation in employment, communication, and civic life. Internet use is necessary for many jobs, is essential to access information ranging from local news to critical government documents, and is the encouraged medium for filing tax returns, registering to vote, and obtaining various permits and licenses. The reason why I harken to that is because in this instance, the defendant essentially contends that we should enter the courtroom assuming the exact opposite, that the jurors that we're dealing with are Luddites, without common knowledge and experience regarding the use of the internet communication. Be careful with those words. I know you're giving the knowledge of some of us, but go ahead, please. Well, what I'm saying is, if the court is gonna say in one place that people are familiar with this, and they need to have access to it because this is the way society is engaged, I think that informs the way lawyers are gonna practice and present their cases. And so in this case, we're presented with- When we drop a package off with UPS or FedEx, a delivery guy comes here or there and picks up the package. It's transported to wherever it is sent. We don't have to know whether the package went to Atlanta, to a distribution center, or to Oakland for a distribution center there. All we need to know is that the package went from point A to point B, and that's the transportation. It seems to me that this is all much ado about nothing. The question is, was the document at point A, and did it later arrive at point B with indicia of having been sent by computer A? And isn't that why? It just seems to me that that's enough. And my question to you is, is that present in this record for us to look at? Absolutely, it's present in this record. And I think I made this point in our section E of our part two of our argument, is even under the defendant's interpretation, they lose because we can show that the images came from the defendant's residence. That's through the IP address. And they went to Google, and they then went to Yahoo, where they captured them and then reported them. So you have points A and point B, which is the defendant's residence, and then Yahoo and Google. So even if we assume, argue, window, that the defendant's understanding of location is correct, you're saying you win? Absolutely, and we would win down on count one, count two, count three, count four, and count five on that. I do strenuously contend, though, that Congress specifically meant to get away from this location idea and simply focusing on the transmission issue relative to transportation. Thank you. Thank you, Castle. Ms. Nichols, I think you have some time left. Thank you. I just have three quick points. First, the government argues that the IP address tells us where the images were. I don't buy that. I think that the exhibits tell us that the evidence connected the IP address with the user, not with the location of the images. There's no clear evidence of that. Two, the government kinda contradicts itself when it says Yahoo is a web-based email. So what happens then if you're in your web-based email and you take an image from an email you have received and put it onto another email, and that email maybe doesn't even get sent because that's a problem in this case, too? So, okay, first, there's no evidence about this email transmission being a web-based transmission. There's no evidence it was actually transmitted. That is sent being pressed. And lastly, I just wanna point out, I think the district court actually ends up getting the definition of transport right. The district court says it doesn't require movement from one geographic location to another, but it does say it requires movement from one place to another. And that place, we totally understand, is in cyberspace. Did it say that in the jury's presence? No, that was in the post-trial denial, the order on the motion for judgment of acquittal. So I think that we agree with the district court on that definition. We just don't agree that the evidence met it here. And with that, thank you. Counsel, I have one question. Aren't we arriving at the point in American society where it can be presumed by the courts that there is an average understanding of the way the web and the internet work? I mean, you're wanting us to go to the era of, I won't use Mr. Hart's word, but I'll use mine, of the dog and pony days when you had to show pretty well how the borough carried the load, et cetera, et cetera, because people didn't understand. Aren't we past that? You almost have to presume ignorance to buy your argument, it seems to me. I guess that tells you I'm not buying much of it, but- Gotcha. I understand that. I mean, I think people generally think they know what an upload means. Nobody told us in this case what Yahoo means when it says upload in that NCMEC report, though. And more specifically, is it enough in a case where somebody has to prove, so let's say that this is a case where somebody has put child pornography in a suitcase and walked across the state line, okay? So that's a transport. What happens? So what evidence is required to meet the transport element there? Can a government agent say, I got a report that said this stuff was transported? No, you're- But when you place a message on Facebook or post it in some other web-based transmission, and your friends in California and New York and Pennsylvania all have access to it. They can all see it.  You're wanting us to buy the argument that somehow this is not transportation. Duh. I guess if you were as dumb as a rock, you could buy that argument, but I don't understand. Okay, so let me take the Facebook example. If I'm on Facebook and a friend of mine has posted a picture I like, I might right-click, copy, and then paste it on my own Facebook page. And it's not coming from my local, I'm not- No, it came from your friend. And when you posted it, when you turned around and put your little heart on it and posted it on your webpage, you transported it just as well to your friends in the Philippines, if they want to look at it there. Well, that's interesting. So I don't think transport is measured from where the viewer is located. And I don't know. I can't tell you, I seriously don't know whether when I do that action I just described, whether I am moving digital bits from one server to another or from one part of a server to another. Well, I've taken you three minutes over and I'm going to, under my own rule, I'm gonna, the chair is gonna drop me on the floor. So I will leave it there. But have I, through my questions, left anything for you, Mr. Hart? Do you just feel compelled to tell us? Your Honor, at a certain point, I look at what our expert rules would require and would we require an expert to come in and say, when you press send on a Gmail message, that is transmission over the internet. We wouldn't require that because that's within the realm of common experience and knowledge. And I think when we do jury selection in voir dire, as we did in this case, and I participated in because I was trial counsel, we ask questions about familiarity with the technologies involved. Google, Yahoo, this sort of thing. Because that informs how we go about. The number of users of Yahoo and Gmail is enormous, which indicates, I think, my position, which is these are well-known technologies and they've been around for a long time. When we get into different technologies, maybe like Dropbox, which not everybody has a need for, then you get into a place where maybe you would need to have somebody explain it. But when we're talking about Gmail and Yahoo email and Yahoo messenger, these are not, I guess my position is, I think the court is correct to presume that jurors are not ignorant and requiring the same dog and pony show. That's the government's position. Thank you very much. Unless my colleagues have further questions that I've evoked. Judge Phillips, you've been so quiet today. I'll try to keep it up. I'll try to smile and continue. All right, thank you very much. The court's going to take about a six minute recess before we take our last case this morning. Thank you, counsel. Your cases are well argued. Case is submitted. Counsel are excused. Thank you.